**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

E.W. Blanch Holdings, Inc. and E.W. Blanch Co., Inc.,

Plaintiffs,

v.

Kevin D. Knudson,

Defendant.

Civil No. 01-775 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

J.D. Jackson, Esq., and Todd Schnell, Esq., Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, and Daniel O'Keefe, Esq., E.W. Blanch Holdings, Inc., 500 North Akard, Suite 4500, Dallas, TX 75201, General Counsel for E.W. Blanch Holdings, Inc. and E.W. Blanch Co., Inc., appeared on behalf of Plaintiffs.

Bruce Douglas, Esq., Larkin, Hoffman, Daly & Lindgren, 1500 Northwest Financial Center, 7900 Xerxes Avenue South, Bloomington, MN 55431, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 8, 2001, pursuant to Plaintiffs' motion for a temporary restraining order. For the reasons stated below, the Court grants Plaintiffs' motion in part and denies it in part.

## Background

Plaintiffs, collectively "E.W. Blanch," sell and administer reinsurance programs. Defendant Kevin Knudson has worked for E.W. Blanch since approximately 1975. Knudson has held a number of positions at E.W. Blanch. On February 5, 1995, Knudson was promoted to the position of Executive Vice President. Knudson worked in E.W. Blanch's Minneapolis office until November of 1998, when he relocated to the Florida office. Currently, Knudson is a resident of the State of Florida.

MAY 10 2001
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

Until 1993, Knudson labored without the benefit or obligation of an employment contract. On or about March 23, 1993, however, E.W. Blanch requested that Knudson sign an employment contract ("the 1993 Employment Agreement") in preparation for an initial public offering, or "IPO." The 1993 Employment Agreement stated in part:

> 7. **Covenants Not to Compete or Interfere**. For a period ending on the later of five (5) years from and after the effective date hereof or two (2) years from and after the termination of Employee's employment hereunder for any reason, Employee will not, directly or indirectly, as a sole proprietor, member of a partnership, or stockholder, investor, officer or director of a corporation, or as an employee, agent, associate or consultant of any person, firm or corporation:
>
> (a) Solicit or accept business (i) from any clients or prospects of the Company or its affiliates where the Employee supervised, directly or indirectly, in whole or in part, the solicitation or service activities related to such client or prospects or (ii) from any former client of the Company or its affiliates who was such within two (2) years prior to Employee's date of termination and who was solicited or serviced directly by the Employee or where the Employee supervised, directly or indirectly, in whole or in part, the solicitation or service activities related to such former client; or
>
> * * *
>
> (c) Engage in the business of the type performed by the Company or its affiliates in the geographic areas where Employee solicited such business on behalf of the Company or its affiliates or where Employee supervised the solicitation of such business on behalf of the Company or its affiliates.
>
> * * *
>
> It is the desire and intent of the parties that the provisions of this paragraph 7 shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any particular portion of this paragraph 7 shall be adjudicated to be invalid or unenforceable, this paragraph 7 shall be deemed amended to delete therefrom the portion thus adjudicated to be invalid or unenforceable, such deletion to apply only with respect to the operation of this paragraph in the particular jurisdiction in which such adjudication is made.
>
> 8. **Nondisclosure of Information**. Employee recognizes and acknowledges that the Company's trade secrets and confidential or proprietary information, including such trade secrets or information as may exist from time to time, and information as to the identity of clients of the Company, reinsurance contract data and other similar items, are valuable, special and unique assets of the Company's business, access to and knowledge of which are essential to the

> performance of the duties of Employee hereunder. Employee will not, during or after the term hereof, in whole or in part, disclose such secrets or confidential or proprietary information to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall Employee make use of any such property for his own purposes or for the benefits of any person, firm, corporation or other entity (except the Company) under any circumstances, during or after the term hereof, provided that after the term hereof these restrictions shall not apply to such secrets or information which are then in the public domain (provided that Employee was not responsible, directly or indirectly, for such secrets or information entering the public domain without the Company's consent).
>
> 9. **Injunctive Relief**. If there is a breach or threatened breach of the provisions of paragraphs 7 or 8 of this Agreement, the Company shall be entitled to an injunction restraining Employee from such breach.

The 1993 Employment Agreement also contained a provision providing that the contract was created pursuant to Minnesota law and establishing Minnesota as the proper venue for any legal disputes arising out of the contract.

The 1993 Employment Agreement stated that it would be in effect for a period of three years and then would "be deemed to be renewed on a month-to-month basis only, subject to early termination by the Company . . . ."

In 1996, E.W. Blanch provided Knudson with a new employment contract (the "1996 Employment Agreement"). The terms of the 1993 and 1996 Employment Agreements are substantially the same, although the guaranteed salary quoted in the 1996 Employment Agreement is significantly higher than that quoted in the 1993 Employment Agreement. Knudson maintains that he did not sign the 1996 Employment Agreement.

In April of 2001, E.W. Blanch provided Knudson with yet another employment contract (the "2001 Employment Agreement"). The 2001 Employment Agreement was substantially different from either the 1993 or 1996 Employment Agreements: (1) the 2001 Employment Agreement contained a Florida choice of law and Florida forum selection clause and (2) the 2001

Employment Agreement purported to prohibit Knudson from soliciting customers "in the United States." The 2001 Employment Agreement also contained an integration clause indicating that all former contracts and agreements were superceded.

Mr. Knudson signed the 2001 Employment Agreement. However, by its terms, the 2001 Employment Agreement was conditioned upon the closing of a proposed merger between E.W. Blanch and the Benfield Greig Group plc. Knudson resigned from E.W. Blanch on April 26, 2001; as of that date, the proposed merger had not yet taken place.

When Knudson left E.W. Blanch on April 26, 2001, he went to work for Aon Re, Inc. The parties agree that Aon Re, Inc., is a direct competitor of E.W. Blanch in the reinsurance business.

On April 27, 2001, Knudson and Aon Re, Inc., filed suit against E.W. Blanch in the United States District Court for the Southern District of Florida. In that Florida action, Knudson and his new employer seek a declaration regarding which, if any, of the Employment Agreements are valid and in effect and determining the scope of the restriction on Knudson's activities on behalf of his new employer.

On April 30, 2001, E.W. Blanch filed an action against Knudson in Minnesota state court alleging breach of contract, unfair competition, and misappropriation of trade secrets. That action, the "Minnesota action," does not allege any specific actions taken or disclosures made by Knudson in violation of his Employment Agreements other than simply working for a competitor in the geographic region in which he was employed by E.W. Blanch. The Minnesota action was removed to Federal District Court and is currently assigned to the undersigned judge.

At present, E.W. Blanch seeks a temporary restraining order enjoining Knudson from: (1) disclosing any confidential information, including information regarding existing and

potential customers, gained during his employment with E.W. Blanch and (2) soliciting or accepting business from any clients or prospects of E.W. Blanch. Knudson maintains that he has not disclosed any proprietary information and that he has not solicited former clients or prospects; indeed, Knudson asserts that, when former clients have sought him out, he has directed them back to E.W. Blanch. In other words, Knudson asserts that he is already voluntarily abiding by the terms E.W. Blanch seeks to memorialize in a temporary restraining order.

**Discussion**

**A. Standard of Review**

Under Eighth Circuit precedent, a temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**B. Likelihood of Success on the Merits**

Where the balance of harms strongly mitigates in favor of injunctive relief, the moving party's burden to demonstrate success on the merits may be reduced from a mathematical probability to a "substantial possibility of success." *Dataphase*, 640 F.2d at 113. The Court

discusses the balance of harms in more detail below, but the Court notes, for purposes of this discussion, that the balance of harms here favors E.W. Blanch. Accordingly, in light of the balance of harms and the limited duration and scope of the proposed temporary restraining order, the Court finds that E.W. Blanch's burden with respect to the likelihood of success on the merits is significantly less than showing such a likelihood by a mathematical probability.

Turning first to the likelihood that E.W. Blanch will succeed on its breach of contract claim, Knudson has challenged the application, validity, and scope of all of the various restrictive covenants contained in the Employment Agreements. At the outset, the Court notes the likelihood that either the 1993 or 1996 Employment Agreements will ultimately prove to be in effect. The 2001 Employment Agreement, although signed by Knudson, never took effect because the condition precedent to its application–E.W. Blanch's merger with the Benfield Greig Group plc–did not take place prior to Knudson terminating his employment with E.W. Blanch. Knudson argues that E.W. Blanch expressed its intent to terminate the 1993 Employment Agreement by proffering the 1996 and 2001 Employment Agreements. Perhaps this argument will eventually carry the day; at present, it strikes the Court as unpersuasive. Thus, the Court concludes that E.W. Blanch is likely to be able to demonstrate that either the 1993 or 1996 Employment Agreements were in effect at the time Knudson terminated his employment; because the 1993 and 1996 Agreements are virtually identical with respect to all the relevant provisions, the Court need not determine which of the two agreements governs the relationship between the parties.

Knudson further argues, however, that neither the 1993 nor 1996 Employment Agreement were ever valid because they were signed after the inception of employment–indeed, 18 years after the inception of employment–and were not supported by independent

consideration other than the promise of future employment. *See National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740-741 (Minn. 1982). It is true that, to be valid under Minnesota law, a restrictive covenant which is not ancillary to the initial written or oral employment contract must be supported by independent consideration. Whether such independent consideration is present must be determined on the facts of each case. *Id.* Here, E.W. Blanch points out that the 1993 Employment Agreement provided Knudson with the option to purchase 20,000 shares of stock in the IPO, and the 1996 Employment Agreement essentially extended the term of the 1996 Employment Agreement. While the Court cannot and will not definitively determine that the stock options constitute adequate consideration, E.W. Blanch has demonstrated at least a substantial likelihood of success on this issue.

Finally, Knudson argues that, even if the 1993 or 1996 Employment Agreement was in effect in April of 2001 and that Agreement was supported by adequate independent consideration, the restrictive covenants are unenforceable because they are overbroad in both scope and duration. However, in Minnesota, courts faced with an overbroad restrictive covenant should not invalidate that covenant, but rather should "blue pencil" it. *See Klick v. Crosstown State Bank of Ham Lake, Inc.*, 372 N.W.2d 85, 88 (Minn. Ct. App. 1985) (under "blue pencil" doctrine, courts can take an overly broad restriction and enforce it only to the extent that it is reasonable). While the Court agrees that the scope[1] and duration of the restrictive covenants may be overbroad, the provisions E.W. Blanch seeks to enforce through this injunction and the duration of a temporary restraining order do not seem overbroad.

---

[1] In particular, the geographic scope of the covenant troubles the Court, especially in light of Knudson's observation that many insurance carriers are national corporations so the effect of a covenant restraining contact with insurance carriers in the southeastern United States is to prohibit contact with most insurance carriers nationwide.

Assuming, then, that at least some provisions of the restrictive covenant are valid and enforceable, E.W. Blanch has some "substantial possibility" of succeeding on the merits of its breach of contract claim. Knudson concedes that he is now working for a direct competitor of E.W. Blanch in the exact same market in which he performed for E.W. Blanch. Despite Knudson's assertion that he has in no way breached the restrictive covenants, one could infer from his employment with Aon Re, Inc., alone that he is engaging in anti-competitive behavior. E.W. Blanch's showing would not likely be sufficient to support a preliminary injunction, but given the very temporary nature of the injunctive relief now sought, the Court finds the showing to be sufficient.

## C. Irreparable Harm

Irreparable harm may be inferred from the breach of a valid restrictive covenant. *See Alside, Inc. v. Larson*, 220 N.W.2d 274, 278 (Minn. 1974). Moreover, although Knudson contends that damages could be readily calculated simply by looking at lost profits from clients who leave E.W. Blanch in favor of Aon Re, Inc., the Court is not convinced. First, the Court questions whether anticipated profits may be readily ascertained in an industry as speculative as the reinsurance industry. Second, and more importantly, E.W. Blanch stands to suffer irreparable harm in the form of lost good will and reputation in the marketplace–harm which cannot be readily remedied by money damages.

## D. Balance of Harms and Public Interest

Knudson contends that entering a temporary restraining order would substantially harm him because it "would bar [him] from conducting reinsurance business in any state, because many of the insurance companies with which he has interfaced in the past have a nationwide presence." Defendant's Memorandum in Opposition at 12. If E.W. Blanch were seeking by this

motion to enforce Paragraph 7(c) of the Employment Contract which forbids Knudson from competing with E.W. Blanch within a large geographic region, Knudson's concerns might be valid. However, E.W. Blanch has sought only to prevent Knudson from disclosing allegedly proprietary information and from soliciting or accepting business from E.W. Blanch clients (or "prospects"). According to Knudson, he is already doing that which E.W. Blanch seeks to compel him to do. Thus, given the limited relief sought by E.W. Blanch and the very brief duration anticipated for this temporary restraining order, the Court finds that Knudson will not be substantially harmed by temporarily abiding by Paragraphs 7(a) and 8.

E.W. Blanch, on the other hand, will suffer almost immediate and irreparable harm if Knudson undertakes to compete with E.W. Blanch for E.W. Blanch's existing clients or to develop the prospects E.W. Blanch has initiated. Similarly, E.W. Blanch will suffer immediate and irreparable harm if Knudson turns over confidential information about clients and policies to E.W. Blanch's direct competitor, Aon Re, Inc.

Finally, the Court notes that public policy favors the enforcement of valid contracts and the protection of legitimate business interests. While the question of the validity and appropriate scope of the restrictive covenants has not yet been resolved, maintaining the integrity of these public interests until such resolution is possible necessitates an award of temporary injunctive relief.

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Temporary Restraining Order (Doc. No. 2) is **GRANTED** as follows:

a. Defendant Kevin D. Knudson is ordered and directed not to disclose any confidential information, including information regarding existing and potential customers, gained during his employment with E.W. Blanch; and

b. Defendant Kevin D. Knudson is ordered and directed not to solicit or accept business from any clients or prospects of E.W. Blanch until such time as this Court shall have an opportunity to act on Plaintiffs' motion for a preliminary injunction or shall issue an order canceling this temporary restraining order.

c. Plaintiffs are not required to post a bond.

2. A preliminary injunction hearing shall be scheduled for June 12, 2001, at 9:00 a.m. unless the parties stipulate to a later date, in which case the parties should notify the Court of their agreement.

3. The parties shall contact Kathy Thobe, Magistrate Judge Arthur J. Boylan's Calendar Clerk, at 651-848-1210, to set up a scheduling conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure so that necessary discovery can be completed in a timely manner consistent with the June 12 hearing date.

Dated: May 10, 2001

DONOVAN W. FRANK
Judge of United States District Court